1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHERE D. WARD, an individual,

11           Plaintiff,                    No. 2:10-cv-00376 KJM KJN PS

12        v.

13   TOM VILSAK, SECRETARY
     DEPT. OF AGRICULTURE,
14
             Defendants.              FINDINGS AND RECOMMENDATIONS
15   _____/

16            Presently before the court is defendant's Motion for Summary Judgment (Mot. for

17   Summ. J., Dkt. No. 22-1) filed pursuant to Federal Rule of Civil Procedure 56, which seeks the

18   dismissal of plaintiff's "Civil Complaint Disability Discrimination."  (Compl. ¶¶ 3-4, Dkt. No.

19   1.)  In this action, plaintiff Chere D. Ward ("plaintiff") alleges a disability discrimination claim

20   against defendant Tom Vilsak, Secretary, Department of Agriculture ("defendant").  (Id.)  The

21   claim arises from defendant's rejection of plaintiff's application for employment with the United

22   States Forest Service.

23            The court heard this matter on its law and motion calendar on October 6, 2011.

24   Attorney Bobbie Montoya appeared on behalf of defendant at the hearing.  Plaintiff appeared on

25   her own behalf at the hearing.  The undersigned has fully considered the parties' submissions,

26   oral arguments, and appropriate portions of the record in this case and, for the reasons that

1   follow, recommends that defendant's motion be denied.

2   I.      BACKGROUND

3           A.      Plaintiff's Complaint

4                   The operative pleading in this case is plaintiff's complaint for "Civil Complaint

5   Disability Discrimination." (Compl. ¶¶ 3-4, Dkt. No. 1.)  The complaint contains one claim for

6   "disability discrimination." (Id. ¶¶ 17-21.)  The complaint suggests that plaintiff brings her

7   disability discrimination claim pursuant to Title VII of the Civil Rights Act of 1964.  (Compl. ¶

8   5.)  However, on closer examination and as discussed below, plaintiff's claim actually proceeds

9   under the Rehabilitation Act.[1]  29 U.S.C. § 791.

10                  Plaintiff's complaint appends an adverse decision of an Equal Employment

11  Opportunity Commission Administrative Judge dated October 20, 2009.  (Compl. ¶¶ 14-15 &

12  Exh. A.)  Plaintiff alleges that she exhausted her administrative remedies prior to bringing this

13  lawsuit, and defendant's motion does not dispute this fact.

14                  Plaintiff alleges that she has been employed by defendant since 1984.  (Id. ¶ 6.)

15  Plaintiff also alleges that, during the relevant time period, she was employed as a "Forestry

16  Technician, purchasing agent" by the Department of Agriculture.  (Id. ¶ 6.)  Plaintiff alleges that

17  she has a hearing impairment that requires her to use a hearing aid, and that she is an "excepted

18  _____

19          [1]  As discussed below, the Ninth Circuit has clarified that Section 501 of the
    Rehabilitation Act (29 U.S.C. § 791) is the exclusive remedy for federal employees alleging
20  discrimination on the basis of disability.  Johnston v. Horne, 875 F.2d 1415, 1418 (9th Cir.
    1989).  Because plaintiff is a federal employee, her remedy for disability discrimination is
21  through the Rehabilitation Act.  See id.; Boyd v. United States Postal Serv., 752 F.2d 410, 413
    (9th Cir. 1985) (holding that Section 501 of the Rehabilitation Act is "the exclusive remedy for
22  discrimination in employment by the Postal Service on the basis of handicap"); Vinieratos v.
    United States, 939 F.2d 762, 773 (9th Cir. 1991) (same holding as to employee of the Air Force).
23  "The standards used to determine whether this section has been violated in a complaint alleging
    non-affirmative action employment discrimination under this section shall be the standards
24  applied under Title I of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12111 et seq.)
    and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act
25  of 1990 (42 U.S.C. §§ 12201–12204 and 12210), as such sections relate to employment."
    Stewart v. U.S., No. C–99–4058 JCS, 2000 WL 1705657, at *3-4 (N.D. Cal. Oct. 10, 2000)
26  (unpublished).

1  service employee hired under the handicap program."  (Id. ¶ 6.)

2         Plaintiff's claims arise from the denial of her application for a job.  Plaintiff

3  alleges that although she was qualified for, and applied for, the vacant position of "Forestry

4  Technician, GS-7" at the Beckwourth Ranger District located in Blairdsen, California, she was

5  not hired for that position (the "Timber Sale Prep" position).  (Id. ¶¶ 1, 7-9, 13, 19.)  She alleges

6  that she was subjected to disability discrimination in that she was not hired due to having a

7  hearing impairment.  (Id. ¶¶ 1, 18-20.)

8         B.    Defendant's Motion For Summary Judgment

9         Defendant makes three arguments in support of summary judgment.  First,

10  defendant argues that plaintiff cannot prove the second element of her prima facie case: that she

11  was "otherwise qualified" for the Timber Sale Prep job.  (Mot. for Summ. J. at 10.)

12         Second, defendant argues that plaintiff cannot prove the third element of her

13  prima facie case: that she was not appointed to the Timber Sale Prep position "solely" because of

14  her disability.  (Id.)

15         Third, defendant argues that *even if* plaintiff could establish all of the elements of

16  her prima facie case, defendant had legitimate, nondiscriminatory reasons for not hiring plaintiff

17  for the Timber Sale Prep job.  Those alleged reasons were plaintiff's poor performance and some

18  "safety issues" that allegedly arose during plaintiff's work detail in the forest.  (Id.)

19         Defendant filed a Reply brief ("Reply") in support of its motion.  (Reply, Dkt. No.

20  29.)  Therein, defendant reiterated several arguments, but did not raise objections to any of the

21  documentary evidence that plaintiff filed along with her Opposition papers.  (Id.)

22         C.    Plaintiff's Opposition To The Motion

23         1.    *Preliminary Issues*

24         The undersigned addresses three preliminary issues in regards to plaintiff's

25  Opposition brief ("Opposition").  (Oppo., Dkt. No. 28.)  First, plaintiff attempted to raise brand-

26  new claims in her Opposition (i.e., for "emotional distress and negligent misrepresentation," and

"intentional interference with prospective employment contracts"), but her original pleading fails to even hint at these claims.  (<u>Compare</u> Dkt. No. 1 (Compl.) <u>with</u> Dkt. No. 28 (Oppo.).)  As discussed during the hearing, these newly raised claims will not be considered at this procedural posture.

Second, plaintiff filed her Opposition one day late.  Defendant flagged this issue in a footnote in the Reply brief, but did not argue that the delayed filing caused any prejudice.  (Reply at 1.)  During the hearing, the undersigned reminded plaintiff of the need to comply with the court's rules and procedural deadlines, and informed her that any failure to do so in the future would subject her to sanctions.

Third, Eastern District Local Rule 260(a) requires that "[e]ach motion for summary judgment or summary adjudication be accompanied by a 'Statement of Undisputed Facts' that shall enumerate discretely each of the specific material facts."  The opposition is required to reproduce the itemized facts and admit or deny such facts with reference to evidence.  E. Dist. Local Rule 260(a).  The opposing party may also file a concise "Statement of Disputed Facts," and the source(s) thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication.  E. Dist. Local Rule 260(b).  The Local Rule's requirements seek to avoid requiring courts to stitch together from voluminous briefs precisely which are disputed versus undisputed facts and speculate thereto.

Plaintiff's Opposition neither reproduced defendant's Statement of Undisputed Facts nor included a concise Statement of Disputed Facts.  However, the textual body of the Opposition both addressed some of the facts described in defendant's filing and introduced some additional facts.  (Oppo. at 9-12.)  As described below, plaintiff also attached pages of documentary "evidence" to her Opposition, but nowhere did she clearly link any particular fact to any particular supporting evidence.

Plaintiff filed 113 pages of "evidence" with her Opposition brief.  (Oppo. at 13-

////

4

146.)  None of this evidence was authenticated.[2]  One central piece of that evidence is a letter

from a vocational nurse confirming that plaintiff was indeed capable of performing the outdoor

portion of the Timber Sale Prep job with the "reasonable accommodation" of an "alternative

listening device, such as a two-way radio microphone attached to [plaintiff's] lapel."  (Exh. A to

Oppo. (page number "150"[3]) (Letter from Sharon O'Sullivan, Senior Vocational Rehabilitation

Counselor, MS, RN, CRC, dated Oct. 14, 2008 (the "O'Sullivan Letter")).)

           If authentic, the O'Sullivan Letter suggests that, at minimum, a dispute of material

fact exists regarding whether plaintiff was capable of performing the essential functions of the

job in question.  However, defendant did not raise any evidentiary objections to the O'Sullivan

Letter or to the rest of plaintiff's evidence.  Defendant did not raise any evidentiary objections in

its Reply briefing or during the hearing.  Fed. R. Civ. P. 56(c)(1)(B) ("A party asserting that a

fact cannot be . . . genuinely disputed must support the assertion by: [. . .] showing that the

materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party

cannot produce admissible evidence to support the fact.")  "Defects in evidence submitted in

opposition to a motion for summary judgment are waived absent a motion to strike or other

objection."  Hoye v. City of Oakland, 653 F.3d 835, 841 (9th Cir. 2011) (quoting FDIC v. New

Hampshire Ins. Co., 953 F.2d 478, 485-86 (9th Cir.1991)); Getz v. Boeing Co., 654 F.3d 852,

---

    [2]  Federal Rule of Civil Procedure 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

    [3]  The 113 pages of documents filed along with plaintiff's Opposition were separated into various groups labeled "A" through "C."  While plaintiff's Opposition suggests that the documents within each group bear page numbers created by plaintiff, such page numbers do not appear on the court's copies of the documents.  Instead, some of the pages bear random numbering that was apparently added at some other point in this case or perhaps as part of another proceeding.  Given the absence of cohesive page numbering and exhibit labels in these documents, the undersigned identifies such documents by including their out-of-sequence page numbers in quotation marks (i.e., page number "150"), and where a given document lacks *any* such numbering, the undersigned describes the document(s) with as much detail as reasonably possible.

868 (9th Cir. 2011) ("[B]y failing to object to or otherwise challenge the introduction of the

[evidence] in the district court, [appellants] have waived any challenge on the admissibility of

this evidence.").  Federal Rule 56(c)(3) provides that the court "may" consider materials in the

record that were not specifically cited by either party.  Accordingly, and given the circumstance

that defendant did not object to any of plaintiff's proffered evidence, the undersigned has

considered some of that evidence as described specifically herein.  Pursuant to Federal Rule

56(e)[4], and solely for purposes of the pending motion, the undersigned will accept the O'Sullivan

Letter (Exh. A to Oppo. (page number "150")), as evidence that plaintiff was potentially capable

of performing the job with a reasonable accommodation.[5]

> In sum, despite plaintiff's failures to strictly comply with the court's orders and

the applicable procedural rules, the undersigned will resolve defendant's motion on the merits.[6]

---

[4]  Federal Rule of Civil Procedure 56(e) provides, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order."

[5]  The plaintiff is cautioned, however, that notwithstanding the court's analysis of her unobjected-to evidence at this posture, plaintiff's documents will not be admitted into evidence at trial unless plaintiff has properly identified and authenticated each document, as well as ensured that the document is not barred by evidentiary rules governing hearsay.

[6]  Future failures to comply with the Federal Rules of Civil Procedure, the court's orders, or the court's Local Rules may be grounds for the imposition of sanctions, including involuntary dismissal of plaintiff's case pursuant to Federal Rule of Civil Procedure 41(b).  See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (recognizing that a court "may act *sua sponte* to dismiss a suit for failure to prosecute"); Hells Canyon Preservation Council v. U.S. Forest Serv., 403 F.3d 683, 689 (9th Cir. 2005) (stating that courts may dismiss an action pursuant to Federal Rule of Civil Procedure 41(b) *sua sponte* for a plaintiff's failure to prosecute or comply with the rules of civil procedure or the court's orders); Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995) (per curiam) ("Failure to follow a district court's local rules is a proper ground for dismissal."); Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992) ("Pursuant to Federal Rule of Civil Procedure 41(b), the district court may dismiss an action for failure to comply with any order of the court."); Thompson v. Housing Auth. of City of L.A., 782 F.2d 829, 831 (9th Cir. 1986) (per curiam) (stating that district courts have inherent power to control their dockets and may impose sanctions including dismissal); see also E. Dist. Local Rule 110 ("Failure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the

1          2.      *Plaintiff's Arguments In Opposition To Summary Judgment*

2          In terms of substantive arguments, Plaintiff argues that she was "qualified" for the

3   Timber Sale Prep job and provides letters of recommendation and good work reviews arising

4   from her prior positions, as well as the O'Sullivan Letter.  (Compl. at 4, 6, 9, 11 (describing

5   plaintiff's work experience and positive reviews); Exh. A to Oppo. (letter dated October 12, 1989

6   re: "1989 OHV Certificate of Appreciation" to Chere Ward); Exh. A to Oppo. (two letters dated

7   February 1, 1989 re: "6140 Awards" to Chere Ward); Exh. A to Oppo. (letter dated November 2,

8   1988 from Forest Supervisor and District Ranger re: certificate of merit to Chere Ward); Exh. A

9   to Oppo. (letter dated November 2, 1988 from Assistant Recreation Officer re: "Certificate of

10  Merit/Cash Award – [. . .] Chere Ward); Exh. A to Oppo. (Letter of Commendation dated May

11  30, 1980 from District Ranger to Chere Ward); Exh. A to Oppo. (Letter of recommendation re:

12  Chere Ward dated September 3, 1997, signed by Resource Officer Karen Fortus); O'Sullivan

13  Letter, Exh. A to Oppo., (page "150").)

14         Plaintiff also argues that her former supervisor, Dave Helton ("Helton"), harbored

15  "ill will" toward her because she was a "hearing impaired person," and that Helton lied about two

16  "safety" incidents supposedly involving plaintiff.  (Compl. at 3-6.)  Plaintiff argues that she was

17  not hired because of these alleged misrepresentations about safety incidents in her work history.

18  (Compl. at 10-11.)

19         Plaintiff does not squarely address defendant's second argument, that her

20  application was not rejected "solely" because of her disability.

21         While plaintiff does not squarely address defendant's third argument, that it had

22  "legitimate nondiscriminatory reasons" for not hiring her, plaintiff does raise various "pretext"

23
_____

24  Court of any and all sanctions authorized by statute or Rule or within the inherent power of the
    Court."); E. Dist. Local Rule 183(a) ("Any individual representing himself or herself without an
    attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other
25  applicable law.  All obligations placed on 'counsel' by these Rules apply to individuals appearing
    in propria persona.  Failure to comply therewith may be ground for dismissal . . . or any other
26  sanction appropriate under these Rules.").

arguments.  (Oppo. at 3, 5-7, 11 (arguing Helton's false, animus-driven report to Parker was the only reason plaintiff was not hired).)  Plaintiff argues that Helton did not document any alleged safety incidents in writing or otherwise approach her about safety issues.  (Id. at 5-7.)  Plaintiff also argues that one of the two safety "incidents" actually involved a completely different female employee, Karen Sheets, who confirmed her involvement in this incident via email to plaintiff. (Oppo. at 11 ("plaintiff never had any experience of accidents or near misses . . . it was another detailer from TEAMS, Karen Sheets, who had the accident."); Exh. D to Oppo. (email from Karen Sheets dated October 9, 2008 at 11:20 a.m. ("Dave Helton may have gotten one of the incidents he was talking about mixed up between you and me.  I know that I did get too close to the equipment one time only, but I never heard that you did.")); Exh. D to Oppo. (email from Karen Sheets dated January 7, 2009 at 1:42 p.m. (the near-miss incident "was between 8/24/05 and 9/15/05").)

     D.    <u>Undisputed Facts</u>

     1.    *Plaintiff Applies For The Timber Sale Prep Job*

It is undisputed that plaintiff is an individual with a "disability" under the ADA and Rehabilitation Act.  (Mot. for Summ. J. at 6 ("Defendant does not dispute the disabled status of the plaintiff under the Rehabilitation Act."); Defendant's Statement of Undisputed Facts ("SUF") ¶¶ 2-4.)  It is also undisputed that, prior to applying for the Timber Sale Prep position, plaintiff had been employed in various United States Forest Service positions and had worked various "details" as part of those positions.  (SUF ¶¶ 6-8.)  It is undisputed that Helton was plaintiff's former supervisor, and that plaintiff listed him as a reference in her application to the Timber Sale Prep position.  (SUF ¶¶ 9, 20.)

Angela Parker ("Parker"), the decision-maker with respect to hiring for the open Timber Sale Prep position, contacted Helton to inquire about plaintiff.  (SUF ¶¶ 18-19.)  Parker spoke telephonically with Helton on June 11, 2008, and later that same day they corresponded via email.  (SUF ¶¶ 21-23; Declaration of Angela Parker ("Parker Decl.") Dkt. No. 23, ¶¶ 8-10;

1   Exhs. A-B to Parker Decl.; pages "240" and "239" of Exh. B of plaintiff's supporting evidence;

2   Exhs. E-F to plaintiff's deposition.)[7]  These communications centered on plaintiff's safety record

3   and prior performance of her detail under Helton.  (SUF ¶¶ 21-23; Parker Decl. ¶¶ 8-10; Exhs. A-

4   B to Parker Decl.)

5           Helton told Parker that plaintiff had some close calls in terms of safety incidents

6   while working in the woods.  (SUF ¶¶ 22-24; Exhs. A-B to Parker Decl.)  Helton told Parker that

7   plaintiff's detail was terminated early due to "safety issues," that plaintiff's "lack of hearing was

8   a big safety issue," that plaintiff had "a few instances involving personal safety," and that "the

9   district was extremely [concerned] about her hearing ability as she was working around logging

10  equipment where hearing is extremely important."  (SUF ¶21-24; Parker Decl. ¶¶ 9-10; Exhs. A-

11  B to Parker Decl.)  Parker declared that Helton told her that plaintiff had "attendance issues," a

12  "hard time" learning, that she was "not qualified" for a timber sale position, and that she had

13  "limited woods skills."  (SUF ¶ 23; Parker Decl. ¶¶ 9-10; Exhs. A-B to Parker Decl.)

14          2.      *Plaintiff Is Denied The Timber Sale Job*

15          On June 11, 2008, the same day after Parker spoke with Helton, Parker contacted

16  plaintiff via email and told plaintiff that she would not be hired.  (SUF ¶ 25; Exh. C to Parker

17  Decl.)  Parker's email to plaintiff explained that plaintiff's previous safety issues while working

18  in the woods meant that Parker could not support plaintiff for the Timber Sale Prep position.

19  ───────────────

20          [7]  While plaintiff did not file a Statement of Disputed Facts or directly respond to
    defendant's Statement of Undisputed Facts, many of the documents plaintiff filed with her
    opposition are identical to the exhibits defendant filed.  Specifically, Exhibit A to Parker's
21  Declaration, which is a June 11, 2008 email from Parker to herself commemorating her
    conversation with Helton, is the same as page "240" of plaintiff's supporting evidence (Exh. B to
22  Oppo.) and is the same as Exhibit E to plaintiff's deposition; Exhibit B to Parker's Declaration,
    which is a June 11, 2008 email exchange between Helton to Parker, is the same as page "239" of
23  plaintiff's supporting evidence (Exh. B to Oppo.) and is the same as Exhibit F to plaintiff's
    deposition; and Exhibit C to Parker's Declaration, which is Parker's June 11, 2008 email to
24  plaintiff denying her the Timber Sales Prep position, is substantively the same (minus some
    underlining) as page "173" of plaintiff's supporting evidence (Exh. D to Oppo.), and is
25  substantively the same as Exhibit G to plaintiff's deposition.  For ease of reference, whenever
    possible, this order will refer solely to Exhibits A, B, and C to the Parker Declaration even where
26  each of the above-listed documents could also be cited.

1   (SUF ¶ 25; Exh. C. to Parker Decl.)  Parker explained that, "due to the nature of the . . . Sales

2   Prep position, the dangerous nature of the working conditions and the requirements of the target

3   grade of working alone, I can not support moving you into that position."  (SUF ¶ 25; Exh. C. to

4   Parker Decl.)  In her email to plaintiff, Parker framed her decision as turning entirely on a "safety

5   issue," and reiterated that "I am responsible for the safety of my employees.  I take this

6   responsibility very seriously."  (Exh. C. to Parker Decl.)

7   II.   LEGAL STANDARDS

8         A.   Summary Judgment

9            Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for

10  summary judgment, identifying each claim or defense—or the part of each claim or defense—on

11  which summary judgment is sought."  It further provides that "[t]he court shall grant summary

12  judgment if the movant shows that there is no genuine dispute as to any material fact and the

13  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[8]  A shifting burden of

14  proof governs motions for summary judgment under Rule 56.  Nursing Home Pension Fund,

15  Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010).

16  Under summary judgment practice, the moving party

17
               always bears the initial responsibility of informing the district court
               of the basis for its motion, and identifying those portions of "the
18             pleadings, depositions, answers to interrogatories, and admissions
               on file, together with the affidavits, if any," which it believes
19             demonstrate the absence of a genuine issue of material fact.

20  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

21  56(c)).  "Where the non-moving party bears the burden of proof at trial, the moving party need

22  only prove that there is an absence of evidence to support the non-moving party's case."  In re

23  Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R.

24  _____

25        [8]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
      2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to
26    Rule 56, "[t]he standard for granting summary judgment remains unchanged."

Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does

not have the trial burden of production may rely on a showing that a party who does have the trial

burden cannot produce admissible evidence to carry its burden as to the fact").

If the moving party meets its initial responsibility, the opposing party must

establish that a genuine dispute as to any material fact actually exists.  See Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  To overcome summary

judgment, the opposing party must demonstrate the existence of a factual dispute that is both

material, i.e., it affects the outcome of the claim under the governing law, see Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores

Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such

that a reasonable jury could return a verdict for the nonmoving party,'"  FreecycleSunnyvale v.

Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).  A

party opposing summary judgment must support the assertion that a genuine dispute of material

fact exists by: "(A) citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations . . . ,

admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact."[9]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However,

the opposing party "must show more than the mere existence of a scintilla of evidence."  In re

Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

In resolving a motion for summary judgment, the evidence of the opposing party

is to be believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may

be drawn from the facts placed before the court must be viewed in a light most favorable to the

---

[9] "The court need consider only the cited materials, but may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

opposing party.  See Matsushita, 475 U.S. at 587; In re Oracle Corp. Sec. Litig., 627 F.3d at 387.

However, to demonstrate a genuine factual dispute, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts. . . . Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  Conclusory, non-

specific statements in affidavits are not sufficient for summary judgment, and "missing facts"

will not be "presumed."  Sullivan v. Dollar Tree Stores, Inc.,  623 F.3d 770, 779-80 (9th Cir.

2010) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).)

> B.    The Rehabilitation Act

The Rehabilitation Act prohibits employment discrimination on the basis of

disability.  29 U.S.C. §§ 791 et seq.  Section 501 of the Rehabilitation Act (29 U.S.C. § 791)

expressly invokes the substance of the Americans with Disabilities Act (the "ADA").  Id.

(incorporating 42 U.S.C. §§ 12111 et seq.).  The Ninth Circuit Court of Appeals looks to the

standards applied under the ADA to determine whether a violation of the Rehabilitation Act

occurred in the federal employment context.  Lopez v. Johnson, 333 F.3d 959, 961 (9th Cir.

2003) ("Section 501 borrows its substantive standards from the Americans with Disabilities Act

(ADA).") (citing 29 U.S.C. § 791(g)); accord Coons v. Sec'y of the U.S. Dept. of Treasury, 383

F.3d 879, 884 (9th Cir. 2004) ("The standards used to determine whether an act of discrimination

violated the Rehabilitation Act are the same standards applied under the Americans with

Disabilities Act"); accord Walton v. U.S. Marshals Serv., 492 F.3d 998, 1003 n.1 (9th Cir. 2007)

(citing Coons).[10]

---

[10]    Section 501 of the Rehabilitation Act incorporates substantive portions of the ADA
and, therefore, ADA cases are instructive in the Rehabilitation Act context and are cited herein.
Section 12111(8) of the ADA is explicitly incorporated into Section 501 of Rehabilitation Act at
29 U.S.C. § 791(g).  "The standards used to determine whether an act of discrimination violated
the Rehabilitation Act are the same standards applied under the Americans with Disabilities
Act."  Walton, 492 F.3d at1003 n.1 (citing Coons, 383 F.3d at 884); Lopez, 333 F.3d at 961
("Section 501 [of the Rehabilitation Act] borrows its substantive standards from the Americans

C.     Burden Shifting

1.     *Plaintiff's Burden To State A Prima Facie Case Under The Rehabilitation Act*

Making a prima facie showing of employment discrimination is not an onerous burden. Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1091 (9th Cir. 2001) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  To state a prima facie case under 29 U.S.C. § 791 (a.k.a., "Section 501")[11] of the Rehabilitation Act, a plaintiff must "demonstrate that (1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability."  Walton, 492 F.3d at 1005; Reynolds v. Brock, 815 F.2d 571, 573–574 (9th Cir. 1987).  A plaintiff must demonstrate that her disability was a motivating factor behind the discrimination.  29 U.S.C. § 791(g) (adopting standards for Americans with Disabilities Act for claims under § 501 of the Rehabilitation Act, including 42 U.S.C. § 12112, which prohibits discrimination "against a qualified individual with a disability **because of** the disability . . . ." (emphasis added)).

2.     *The Burden Shifts To Defendant To Offer Legitimate Nondiscriminatory Reasons Supporting The Rejection Of Plaintiff's Application*

Once a prima facie case has been made, the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the action.  Reynolds, 815 F.2d at 574; Lucero v. Hart, 915 F.2d 1367, 1371 (9th Cir. 1990); Wilborn v. Ashcroft, 222 F. Supp. 2d 1192, 1206-07 (S.D. Cal. 2002) (applying McDonnell Douglas burden-shifting framework to disability discrimination claim under Rehabilitation Act).

////

---

with Disabilities Act (ADA).") (citing 29 U.S.C. § 791(g)).

[11]   Defendant's moving papers presume that Section 504 of the Rehabilitation Act–not Section 501–applies.  The difference directly bears on plaintiff's burden at this procedural posture, and is discussed further below in addressing defendant's second argument.  Because the federal government is the employer in this matter, Section 501 of the Rehabilitation Act is implicated here.  See 29 U.S.C. § 791.

1       3.     *The Burden Shifts Back To Plaintiff To Show The Proffered Reasons Were*
2              *Pretextual*

3            If defendant articulates a legitimate, non-discriminatory reason for the action, the

4 burden then shifts back to the plaintiff to produce evidence showing that the reason offered by

5 the defendant is pretextual.  Smith v. Barton, 914 F.2d 1330, 1339 (9th Cir.1990) (applying

6 McDonnell Douglas framework for Title VII discrimination claims to discrimination claim

7 brought under ADA);  Mustafa v. Clark Cnty. Sch. Dist., 157 F.3d 1169, 1175 n.6 (9th Cir.

8 1998); Wilborn, 222 F. Supp. 2d at 1206-07 (applying McDonnell Douglas burden-shifting

9 framework to disability discrimination claim under Rehabilitation Act).  A plaintiff "may

10 demonstrate pretext either directly by persuading the court that a discriminatory reason likely

11 motivated [the defendant] or indirectly by showing that [the defendant's] proffered explanation is

12 unworthy of credence."  Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1212 (9th Cir. 2008)

13 (citation and quotation marks omitted) (applying McDonnell Douglas burden-shifting framework

14 to claim under the Age Discrimination in Employment Act).

15 III.    DISCUSSION

16     A.    Defendant's First Argument: Plaintiff Cannot Prove The Second Element Of Her
           Prima Facie Case, Namely, That She Was "Qualified" For The Job
17
      1.    *"Qualified"*
18

19            As part of her prima facie case of disability discrimination, a plaintiff bears the

20 burden of proving that she is "qualified" for the position in question.  Bates v. United Parcel

21 Service, Inc., 511 F.3d 974, 990-91 (9th Cir. 2007) (en banc).  Section 501 expressly incorporates

22 the ADA, including the ADA's definition of a "qualified individual."  29 U.S.C. 791(g)

23 (incorporating 42 U.S.C. §§ 12111 et seq.); 42 U.S.C. § 12111(8) (defining "qualified

24 individual").  "The term 'qualified individual' means an individual who, with or without

25 reasonable accommodation, can perform the essential functions of the employment position that

26 such individual holds or desires."  42 U.S.C. § 12111(8) (incorporated into Section 501 of

1    Rehabilitation Act at 29 U.S.C. § 791(g)); 29 C.F.R. § 1630.2(m).

2          The statutory definition of "qualified" is in accord with the definition used in

3    decisions addressing disability discrimination.  Courts have clarified that "otherwise qualified"

4    means that the plaintiff "can perform 'the essential functions' of the job in question," either with

5    or without reasonable accommodations.  Sch. Bd. of Nassau Cnty., Fla. v. Arline, 480 U.S. 273,

6    288 n.17 (1987) (citing 45 C.F.R. § 84.3(k)); accord Chalk v. U.S. Dist. Court Cent. Dist. of Cal.,

7    840 F.2d 701, 705 (9th Cir. 1988) (quoting Arline); Humphrey v. Mem'l Hosp. Ass'n, 239 F.3d

8    1128, 1135 (9th Cir. 2001) (A qualified individual is "an individual with a disability who, with or

9    without reasonable accommodation, can perform the essential functions of the employment

10   position that such individual holds or desires.") (citing 42 U.S.C. § 12111(8)).)  "When a

11   handicapped person is not able to perform the essential functions of the job, the court must also

12   consider whether any 'reasonable accommodation' by the employer would enable the

13   handicapped person to perform those functions."  Arline, 480 U.S. at 288 n.17.

14         The Ninth Circuit Court of Appeals has described qualification for a position as

15   involving a two-step inquiry.  Bates, 511 F.3d at 990.  The court must first examine whether the

16   individual satisfies the "requisite skill, experience, education and other job-related requirements"

17   of the position.  Id.  The court then considers whether the individual "can perform the essential

18   functions of such position" with or without a reasonable accommodation.  29 C.F.R. §

19   1630.2(m); 42 U.S.C. § 12111(8); see Humphrey v. Mem'l Hosp. Ass'n, 239 F.3d 1128, 1135

20   (9th Cir. 2001).

21         The Ninth Circuit Court of Appeals has further clarified the definitions of

22   "qualified" and "essential functions" in the summary judgment context.  In Bates, 511 F.3d at

23   990 -91, the court analyzed the term "qualified" under the ADA and explained:

24                 To prove that he is "qualified," the applicant also
                   must show that he can perform the "essential
25                 functions" of the job. 42 U.S.C. § 12111(8).
                   [Citations.] As noted earlier, **a job's "essential
26                 functions" are "fundamental job duties of the**

employment position ... not includ[ing] the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1); see also id. § 1630.2(n)(2)-(3) (elaborating on reasons and evidence relevant to an essential function showing). **"Essential functions" are not to be confused with "qualification standards," which an employer may establish for a certain position.** Whereas "essential functions" are basic "duties," 29 C.F.R. § 1630.2(n)(1), "qualification standards" are "personal and professional attributes" that may include "physical, medical [and] safety" requirements. Id. § 1630.2(q). The difference is crucial.

[. . .]

**Although the plaintiff bears the ultimate burden of persuading the fact finder that he can perform the job's essential functions, we agree with the Eighth Circuit's approach that "an employer who disputes the plaintiff's claim that he can perform the essential functions must put forth evidence establishing those functions."** EEOC v. Wal-Mart, 477 F.3d 561, 568 (8th Cir.2007). The genesis of this rule is the recognition that "much of the information which determines those essential functions lies uniquely with the employer." Benson v. NW. Airlines, Inc., 62 F.3d 1108, 1113 (8th Cir.1995). In addition, the ADA and implementing regulations direct fact finders to consider, among other things, "the employer's judgment as to what functions of a job are essential," 42 U.S.C. § 12111(8); job descriptions prepared before advertising or interviewing applicants, id.; "[t]he amount of time spent on the job performing the function," 29 C.F.R. § 1630.2(n)(3)(iii); "[t]he consequences of not requiring the [applicant or employee] to perform the function," id. § 1630.2(n)(3)(iv); and the work experience of current and former employees. Id. § 1630.2(n)(3)(vi), (vii). **Thus, to the extent that an employer challenges an ADA plaintiff's claim that he can perform the job's essential functions, we think it appropriate to place a burden of production on the employer to come forward with evidence of those essential functions.** [Citations.]

Bates, 511 F.3d at 990-91 (footnote and citations omitted) (emphasis added); Scott v. City of Yuba City, 2009 WL 4895549, at * 8-9 (E.D. Cal. Dec. 11, 2009) (unpublished) (applying Bates at summary judgment and explaining that the court in Bates held that "the employer bears the

"burden of production . . . to come forward with evidence of [the] essential functions. Determination of essential functions is a question of fact.  [Citation.]  Once these functions have been identified, the plaintiff bears the burden of showing that he can perform them, either with or without accommodation." (citing 42 U.S.C. § 12111(8)).[12]  "The determination of essential functions is a factual finding we review for clear error." Bates, 511 F.3d at 991 n.7.  "A highly fact-specific inquiry is necessary to determine what a particular job's essential functions are." Cripe v. City of San Jose, 261 F.3d 877, 888 n.12 (9th Cir. 2001).

  2. *Whether Plaintiff Was "Otherwise Qualified" Depends On The Job's "Essential Functions"*

   While the court in Bates described a two-step analysis for determining whether a plaintiff is "otherwise qualified" for a given position, here defendant's argument (Mot. for Summ. J. at 6-8; Reply at 2-3) focuses solely on the second step: plaintiff's inability to perform the "essential functions" of the position.  Bates, 511 F.3d at 990.  Therefore, following the approach used in Bates, the undersigned turns to the job's essential functions.  See id.; see also Scott, 2009 WL 4895549, at *8-9 ("[b]ecause defendant here does not otherwise argue" the issues pertaining to the first step of the two-step analysis described in Bates, the "court turns to essential functions"—the second step of the analysis).

   To prove that she is qualified for the job in question, plaintiff must "show that [she] can perform the 'essential functions' of the job'," either with or without reasonable accommodation.  See Bates, 511 F.3d at 990.  However, as discussed above, it is the defendant's burden to come forward with evidence of what are these "essential functions," and here defendant did not do so.  See id. at 990-91.

////

---

[12]  See also Brown v. Arizona, No. CV–09–2272–PHX–GMS, 2011 WL 2911054, at * 8 (D. Ariz. July 20, 2011) (unpublished) (applying Bates and denying summary judgment in part where defendant had not "produced any evidence as to what [the] essential functions" of the job were).

1       a.      *Plaintiff Has Offered Evidence That She Was "Qualified"*

2               Plaintiff has supplied evidence that she was able to perform the outdoor duties of

3   the position in question.  As described above, plaintiff has submitted a letter from a vocational

4   nurse, the O'Sullivan Letter, confirming that plaintiff could perform the outdoor portions of the

5   Timber Sale Prep job with the "reasonable accommodation" of an "alternative listening device,

6   such as a two-way radio microphone attached to [plaintiff's] lapel."  (O'Sullivan Letter, Exh. A

7   to Oppo. (page "150").)[13]  As noted above, defendant did not object to this evidence within its

8   Reply brief or during the hearing.  It is unclear what job description(s), if any, the vocational

9   nurse reviewed prior to drawing her conclusions about plaintiff's abilities, but the letter

10  nonetheless reflects a question of material fact regarding plaintiff's ability to perform the outdoor

11  portions of job in question.  The outdoor portions of the job are the very portions defendant

12  argues plaintiff was not qualified to perform.  (Mot. for Summ. J. at 7-8 (focusing on plaintiff's

13  experience with work "in the forest"); Reply at 4-5 (describing plaintiff's "lack of woods savvy"

14  as rendering her unqualified and motivating Parker's decision).)  The O'Sullivan Letter directly

15  conflicts with defendant's arguments that plaintiff's hearing abilities caused safety issues that

16  rendered her unqualified for the Timber Sale Prep position.[14]

17  _____

18      [13]  Plaintiff also provides letters of recommendation and good work reviews arising from
    her prior positions.  (Compl. at 4, 6, 9, 11 (describing plaintiff's work experience and positive
19  reviews); Exh. A to Oppo. (letter dated October 12, 1989 re: "1989 OHV Certificate of
    Appreciation" to Chere Ward); Exh. A to Oppo. (two letters dated February 1, 1989 re: "6140
20  Awards" to Chere Ward); Exh. A to Oppo. (letter dated November 2, 1988 from Forest
    Supervisor and District Ranger re: certificate of merit to Chere Ward); Exh. A to Oppo. (letter
21  dated November 2, 1988 from Assistant Recreation Officer re: "Certificate of Merit/Cash Award
    – [...] Chere Ward); Exh. A to Oppo. (Letter of Commendation dated May 30, 1980 from District
22  Ranger to Chere Ward); Exh. A to Oppo. (Letter of recommendation re: Chere Ward dated
    September 3, 1997, signed by Resource Officer Karen Fortus).)  Defendant argues that these
23  letters and plaintiff's resume and work history do not reveal plaintiff to be sufficiently qualified
    as a matter of law (Reply at 2-3), however, as described below, the undersigned cannot make this
24  determination.

25      [14]  E.g., Exh. C to Parker Decl. ("As I understand it, there were previous **safety issues**
    with you working in the woods.  Due to the nature of the Beckwourth Sales Prep position, the
26  dangerous nature of working conditions and the requirements of working alone, I can not support

                                          18

1    In sum, plaintiff has produced evidence that, at least in the opinion of a vocational

2 counselor, plaintiff was physically capable of performing the portion of the job, with a reasonable

3 accommodation, upon which defendant's motion focuses—the job's outdoor or "woods" portion.

4 (O'Sullivan Letter, Exh. A to Oppo., (page "150").)  This evidence is not the end of the inquiry,

5 however, as it is plaintiff's burden to show that she was capable of performing all of the job's

6 "essential functions," not just that she could perform a major portion of the job.  See Bates, 511

7 F.3d at 990.

8    b.    *Defendant Has Not Defined The Job's "Essential Functions"*

9    With regard to the job's "essential functions," it is unclear whether plaintiff could

10 perform all such functions in this particular case, because defendant did not substantiate those

11 functions within its moving papers or supporting documents.  See Bates, 511 F.3d at 990-91

12 ("[T]o the extent that an employer challenges . . . plaintiff's claim that he can perform the job's

13 essential functions, we think it appropriate to place a burden of production on the employer to

14 come forward with evidence of those essential functions.")

15    During the hearing, when asked about the job's "essential functions," defendant's

16 counsel directed the court to the general text of the job description for the Timber Sale Prep

17 position.  It is true that "consideration shall be given to the employer's judgment as to what

18 functions of a job are essential, and if an employer has prepared a written description before

19 advertising or interviewing applicants for the job, this description shall be considered evidence of

20 _____

21 moving you into that position."); Parker Decl. ¶¶ 9-10 (Parker declared that Helton told her that
   plaintiff's "lack of hearing was a big safety issue," and that "the district was extremely

22 [concerned] about her hearing ability as she was working around logging equipment where
   hearing is extremely important."); Exh. A to Parker Decl. [June 11, 2008 email from Parker to

23 herself commemorating her conversation with Helton] ("I was wondering about her skill and
   ability in the woods: specifically if her hearing was a safety issue with her work."); Exh. B to

24 Parker Decl. [email exchange dated June 11, 2008 between Parker and Helton] ("**The district
   was extremely concerned about her hearing ability as she was working around logging**

25 **equipment where hearing is extremely important.** [. . .] she also had limited woods skills
   **which combined with her hearing capability** make [sic] **a safety situation** that we had to

26 address.") (emphasis added).

1  the essential functions of the job." 42 U.S.C. § 12111(8).  However, the record contains *two*

2  *different* lengthy job descriptions both bearing the code "GS-462-07"—and it is unclear which of

3  these actually governed the position when plaintiff applied.  (<u>Compare</u> Exh. A to Pl.'s Depo.

4  <u>with</u> Exh. B to Oppo. at 1-3.)[15]

5          Moreover, while a job description may be evidence of a job's essential functions,

6  "an employer may not turn every condition of employment which it elects to adopt into a job

7  function, let alone an essential job function, merely by including it in a job description." <u>Rohr v.</u>

8  <u>Salt River Project Agric. Imp. & Power Dist.</u>, 555 F.3d 850, 864 (9th Cir. 2009) (quoting <u>Cripe</u>,

9  261 F.3d at 887).  Thus, "[w]here there is 'conflict in the evidence regarding the essential

10  functions of [a position], we conclude that there is a factual dispute . . . notwithstanding the job

11  descriptions that [an employer] has prepared.'" <u>Id.</u> (quoting <u>Cripe</u>, 261 F.3d at 888-89).

12          While defendant proffers evidence that Parker rejected plaintiff's application

13  because "the Timber Sale Preparation position . . . would entail working around logging

14  equipment, working alone, and working on steep, rocky ground" (Parker Decl. ¶ 11), defendant

15  does not clarify whether these were the position's "essential functions" rather than tasks that

16  would be performed infrequently.  <u>See Bates</u>, 511 F.3d at 990.  The undersigned will not simply

17  assume that Parker's mention of these three job duties constitutes a list of the job's core

18  "essential functions" given that judgment as a matter of law hangs in the balance.  As plaintiff

19  persuasively notes in her Opposition, "there is no mention in the job description that requires

20

21          [15]   One job description is labeled "Forestry Technician (Timber Sale Preparation), GS-
     0462-07" (Exh. A to Pl.'s Depo.), the other is labeled "Forestry Technician (Timber Sale
22   Administration), GS-0462-07" (Exh. B to Oppo. at 1-3.)  Defendant did not address plaintiff's
     latter-filed document.  The record also contains two *additional* job descriptions bearing the codes
23   "0462-08" and "0462-09" and described as "Forestry Technician (Timber Sale Preparation)"
     positions.  (Exhs. B-C to Pl.'s Depo.)  In any event, while the "Timber Sale Administration"
24   description (Exh. A to Pl.'s Depo.) appears to address plaintiff's *former* position, given that two
     of the job descriptions bear the identical codes of "GS-0462-07," the undersigned will not
25   assume that is the case.  During the hearing, when the undersigned referenced these two lengthy
     job descriptions, neither party clarified which job description actually governed the position at
26   issue in this case.

employee to have excellent hearing or that states that they would be working alone." (Oppo. at

12.)  Although consideration is given to the employer's view as to the essential job functions,

without more this order cannot conclusively decide whether the three duties stated above were

necessarily "essential" job functions.  See Lazcano v. Potter, 468 F. Supp. 2d 1161, 1167-68

(N.D. Cal. 2007) (holding that "[t]he government's assertion that delivering mail and casing mail

were essential job functions 'does not qualify as an undisputed statement of fact in the context of

a motion for summary judgment'") (citing Mustafa, 157 F.3d at 1175 n.6); Reese v. Barton

Healthcare Sys., 693 F. Supp. 2d 1170, 1182-83 (E.D. Cal. 2010) (applying Lazcano and Mustafa

and finding a genuine issue of material fact existed regarding job's essential functions).  Because

defendant did not meet its burden of producing evidence of the job's actual essential functions,

plaintiff's hands are somewhat tied: she cannot present evidence that she had the ability to

perform the job's "essential functions" because defendant has not identified those functions.  See

Bates, 511 F.3d at 990-91.  Further, there is evidence that plaintiff's vocational counselor

believed plaintiff capable of performing *all* outdoor portions of the job if reasonable

accommodations were provided.  (O'Sullivan Letter, Exh. A to Oppo., (page "150").)

Accordingly, a genuine issue of material fact exists with respect to whether plaintiff could

perform the "essential functions" of the Timber Sales position.[16]

---

[16]  Moreover, *even if* "working around logging equipment, working alone, and working on steep, rocky ground" (Parker Decl. ¶ 11) constitute the precise "essential functions" plaintiff could not perform, defendant has not attempted to show that plaintiff could not perform such duties "with or without reasonable accommodation." 42 U.S.C. § 12111 (incorporated into Section 501 of the Rehabilitation Act at 29 U.S.C. § 791(g); see Arline, 480 U.S. at 287 n.17; Bates, 511 F.3d at 990 (whether an individual is "qualified" means "whether the individual 'can perform the essential functions of such position' with or without a reasonable accommodation"). Indeed, defendant does not discuss whether plaintiff could have performed these three functions even if she received a reasonable accommodation to help prevent any so-called "safety issues." As the court in Mantolete v. Bolger explained, the definition of "qualified handicapped individual" under Section 501 of the Rehabilitation Act differs from definition under Section 504 in the imposition of an explicit requirement that accommodation of the handicap be considered in determining a handicapped person's qualifications for federal employment.  Mantolete v. Bolger, 767 F.2d 1416, 1421 (9th Cir.1985); see also Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 410 (1979) (discussing the difference between the affirmative action obligation of the federal

1          c.        *The Undersigned Cannot Find As A Matter Of Law That Plaintiff's Work*
                    *History Renders Her Unqualified*

2

3          Finally, while defendant argues that plaintiff cannot show that she was "qualified"

4    for the Timber Sale Prep position because she lacked sufficient experience and skill as a matter

5    of law, this argument is not well-taken.  (E.g., Reply at 2-3.)  To support this argument,

6    defendant dissects plaintiff's resume and argues that "the extent of [plaintiff's] presale

7    experience . . . consisted of a total of approximately five months and two weeks over a 13-year

8    period . . . and occurred more than 17 years prior to Ms. Parker's consideration of [plaintiff] for

9    the Timber Sale Preparation position."  (Reply at 3.)  Defendant also argues that, because

10   plaintiff "had not worked in the forest" since July 2005, her forest "skills could not have

11   improved since then."  (Id.)  Defendant notes that "all of [plaintiff's] permanent positions for the

12   [United States Forest Service] had been in business management, purchasing/contracting, and

13   administration."  (Id.)  Defendant also raises Helton's characterizations of plaintiff's alleged

14   "safety issues" and argues that they rendered plaintiff unqualified for the position.  (Id.)

15   Defendant concludes that, given plaintiff's "five months and two weeks" of sales experience and

16   plaintiff's alleged "safety issues," plaintiff has "failed to establish that she was qualified to

17   perform the essential functions of the Timber Sale Preparation position."  (Id.)

18          Defendant's argument essentially asks the undersigned to find, as a matter of law,

19   that five months and two weeks' experience and some disputed[17] "safety issues" necessarily

20   ────────────────

21   government under § 501, the encouragement to state agencies to adopt such programs, and the
     lack of any such requirement under § 504).

22

23          [17]  As discussed above, plaintiff suggests that one of the safety "incidents" actually
     involved a completely different female employee, Karen Sheets, who confirmed her involvement

24   in this incident via email to plaintiff.  (Oppo. at 11 ("plaintiff never had any experience of
     accidents or near misses . . . it was another detailer from TEAMS, Karen Sheets, who had the

25   accident."); Exh. D to Oppo. (email from Karen Sheets dated October 9, 2008 at 11:20 a.m.
     ("Dave Helton may have gotten one of the incidents he was talking about mixed up between you

26   and me.  I know that I did get too close to the equipment one time only, but I never heard that you
     did.")); Exh. D to Oppo. (email from Karen Sheets dated January 7, 2009 at 1:42 p.m. (the near-

rendered plaintiff "unqualified" to perform the "essential functions" of the Timber Sale Prep

position.  The undersigned cannot make this finding.  As described above, defendant has not met

its burden of demonstrating the "essential functions" of the position.  See Bates, 511 F.3d at

990-91.  Without a clear statement of the job's essential functions, the undersigned cannot

determine whether, for instance, having "five months and two weeks" of experience renders

plaintiff unqualified to perform those functions as a matter of law.  (Oppo. at 11.)  Without a

clear statement of the job's essential functions, the undersigned cannot determine that a particular

amount of experience combined with certain "safety issues" renders plaintiff unqualified as a

matter of law—especially where the safety incidents are *disputed*.

        d.      *Defendant's First Argument Does Not Support A Grant Of Summary Judgment*

        For all of the foregoing reasons, summary judgment is inappropriate with regards

to defendant's first argument.  Plaintiff's O'Sullivan Letter is evidence that plaintiff was capable

of performing the portion of the job, with a reasonable accommodation, upon which defendant's

briefing focuses—the outdoor or "woods" portion.  (Mot. for Summ. J. at 7-8 (focusing on

plaintiff's experience with work "in the forest"); Reply at 4-5 (describing plaintiff's "lack of

woods savvy" as rendering her unqualified and motivating Parker's decision); Parker Decl. ¶¶ 8-

11, 15.)  Defendant, on the other hand, has not produced evidence of the job's essential

functions, and questions of fact exist with respect to what were those "essential functions."[18]

---

miss incident "was between 8/24/05 and 9/15/05").)  Defendant did not object to these emails.
Plaintiff's denial of any involvement in any safety "close calls" while under Helton's supervision
raises a dispute of material fact regarding whether plaintiff actually had any connection to any
safety incidents.  However, plaintiff's evidence that Karen Sheets, not plaintiff, had the "close
call" does not sufficiently support a "pretext" argument here.

    [18]  See Brown, 2011 WL 2911054, at * 6 ("[Defendant] does not argue that Plaintiff could
not perform the essential functions of her position with or without reasonable accommodation.
Because the Ninth Circuit shifts the burden of production to an employer challenging an
employee's qualified status, and because the [defendant] has neither directly challenged
Plaintiff's ability to perform the essential functions of her position with or without reasonable
accommodation, nor has it produced any evidence as to what those essential functions are,
summary judgment on this point would be inappropriate.")

1   Defendant has not shown that, as a matter of law, plaintiff was incapable of performing the job's

2   essential functions with or without reasonable accommodations.[19]  See Bates, 511 F.3d at 990-91.

3       B.      Defendant's Second Argument: Plaintiff Cannot Prove That She Was Not
                Hired "Solely" Because Of Her Disability

4

5           Defendant assumes that Section 504 of the Rehabilitation Act governs plaintiff's

6   action.  (Mot. for Summ. J. at 6 (citing Wong v. Regents of the Univ. of Cal., 410 F.3d 1052,

7   1058 (9th Cir. 2005), and framing plaintiff's prima facie case as including the burden of proving

8   plaintiff suffered adverse action "solely" because of her disability).)  As described below,

9   however, Section 501—not Section 504—governs this action.  See Boyd v. United States Postal

10  Serv., 752 F.2d 410, 413 (9th Cir. 1985); Stewart v. U.S., No. C–99–4058 JCS, 2000 WL

11  1705657, at *3-4 (N.D. Cal. Oct. 10, 2000) (unpublished).

12          The plain text of Section 504 prohibits the exclusion of a qualified individual

13  "**solely** by reason of his or her disability." 29 U.S.C. § 794(a) (emphasis added).  In order to state

14  a prima facie case under Section 504 of the Rehabilitation Act, a plaintiff must establish, inter

15  alia, that they are (1) an individual with a disability, (2) otherwise qualified, and (3) subjected to

16  discrimination solely by reason of their disability.  Mustafa, 157 F.3d at 1174 n.2 (applying 29

17  U.S.C. § 794(a), because "it is undisputed that [defendant] receives federal financial

18  assistance")); Martin v. California Dept. of Veterans Affairs, 560 F.3d 1042, 1049 (9th Cir.

19  2009) ("The causal standard for [Section 504 of] the Rehabilitation Act is even stricter,

20  demanding that [plaintiff] show that she was denied services 'solely by reason of' her

21

22      [19]  Plaintiff's complaint alleges one claim for "disability discrimination."  She does not
    allege a specific claim for failure to provide a "reasonable accommodation."  However, the
23  second prong of plaintiff's prima facie case involves determining whether plaintiff could have
    performed the job's essential functions "with or without" a reasonable accommodation.  See
24  Walton, 492 F.3d at 1005 (identifying whether plaintiff was "qualified" for the position as the
    second prong of plaintiff's prima facie case); 42 U.S.C. § 12111(8) ("The term 'qualified
25  individual' means an individual who, with or without reasonable accommodation, can perform
    the essential functions of the employment position that such individual holds or desires.").
26  Section 12111(8) of the ADA is explicitly incorporated into Section 501 of Rehabilitation Act at
    29 U.S.C. § 791(g).

1  disability.") (citing 29 U.S.C. § 794(a).)  Thus, applying Section 504 of the Rehabilitation Act

2  would inject the word "solely" into the third prong of plaintiff's prima facie case.  See Stewart,

3  2000 WL 1705657 at *3-4.

4          Section 501 carries with it a slightly different prima facie case burden than

5  Section 504, as the plain text of Section 501 does not contain the term "solely."  29 U.S.C. § 791.

6  Section 501 incorporates language from the ADA that does not make the word "solely" a part of

7  a plaintiff's prima facie case.  "[T]he ADA standards incorporated into the Rehabilitation Act

8  under § 501(g) do not require the adverse employment action to have been 'solely by reason of'

9  disability, in contrast to the explicit terms of § 504.  See 42 U.S.C. § 12112(a).  The omission of

10 this language was not accidental."  Stewart, 2000 WL 1705657 at *3-4 n.10.  "The key ADA

11 provision that is incorporated into § 501 is 42 U.S.C. § 12112, which provides in relevant part as

12 follows:  No covered entity shall discriminate against a qualified individual with a disability

13 **because of the disability** of such individual in regard to job application procedures, the hiring,

14 advancement, or discharge of employees, employee compensation, job training, and other terms,

15 conditions, and privileges of employment."  Id. at 4 n.9 (emphasis added); e.g., Head v. Glacier

16 Northwest Inc., 413 F.3d 1053, 1065 (9th Cir. 2005) ("[W]e conclude that 'solely' is not the

17 appropriate causal standard under any of the ADA's liability provisions. . . .We conclude that a

18 motivating factor standard is the appropriate standard for causation in the ADA context[.]").

19         Section 501's prima facie case thus requires plaintiff to show that she was denied

20 the job simply "because of" her disability–such that her disability was *a* factor in the decision,

21 albeit not necessarily the *only* factor.  See Stewart, 2000 WL 1705657 at *3-4.  Under Section

22 501, a plaintiff must demonstrate that her disability was a "motivating factor" behind the

23 discrimination.  29 U.S.C. § 791(g) (adopting standards for Americans with Disabilities Act for

24 claims under § 501 of the Rehabilitation Act, including 42 U.S.C. § 12112, which prohibits

25 discrimination "against a qualified individual with a disability **because of** the disability . . .")

26 (emphasis added).)  Plaintiff makes her prima facie case showing under Section 501.

1          1.      *Section 501 Applies To This Action*

2          Section 501 of the Rehabilitation Act governs federal agencies and directs them to

3    institute "affirmative action plans" for the "hiring, placement, and advancement of individuals

4    with disabilities."[20]  Section 501 is broad in scope and deals with these "plans," and courts have

5    held that Section 501 contains a private right of action for federal employees suing for disability

6    discrimination.[21]  On its face, Section 501 applies to federal employers.  29 U.S.C. § 791.

7    "Section 501 provides for two types of claims: 1) "non-affirmative action" employment

8    discrimination claims based upon 29 U.S.C. § 791(g), [citation], and 2) claims based upon a

9    government employer's failure to reasonably accommodate an employee, as required under 29

10   U.S.C. § 791(b) [citation].  The former category of claims are governed by the standards

11   contained in the Americans With Disabilities Act ("ADA"), which are explicitly incorporated

12   into 501(g)."  Stewart, 2000 WL 1705657 at *3-4 (citations omitted).

13         On the other hand, Section 504 of the Rehabilitation Act targets

14   "Nondiscrimination under Federal Grants and Programs" and requires that recipients of federal

15

---

16         [20]  Section 501 provides, in relevant part, as follows: "(b) Federal agencies; affirmative
     action program plans: Each department, agency, and instrumentality (including the United States
17   Postal Service and the Postal Regulatory Commission) in the executive branch and the
     Smithsonian Institution shall, within one hundred and eighty days after September 26, 1973,
18   submit to the Commission and to the Committee an affirmative action program plan for the
     hiring, placement, and advancement of individuals with disabilities in such department, agency,
19   instrumentality, or Institution. Such plan shall include a description of the extent to which and
     methods whereby the special needs of employees who are individuals with disabilities are being
20   met. Such plan shall be updated annually, and shall be reviewed annually and approved by the
     Commission, if the Commission determines, after consultation with the Committee, that such
21   plan provides sufficient assurances, procedures and commitments to provide adequate hiring,
     placement, and advancement opportunities for individuals with disabilities. [. . .] (g) Standards
22   used in determining violation of section: The standards used to determine whether this section
     has been violated in a complaint alleging nonaffirmative action employment discrimination under
23   this section shall be the standards applied under Title I of the Americans with Disabilities Act of
     1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the
24   Americans with Disabilities Act of 1990 (42 U.S.C. 12201-12204 and 12210), as such sections
     relate to employment."  29 U.S.C. § 791.

25
     
26         [21]  29 U.S.C. § 794a(a)(1) (providing that Title VII remedies are available to an employee
     "with respect to any complaint [filed] under [Section 501] . . .").

funds not discriminate against disabled individuals.[22]  Section 504 does not, on its face, apply to federal employers.[23]  29 U.S.C. § 794.

Moreover, the Ninth Circuit Court of Appeals has held that Section 501 of the Rehabilitation Act ("Section 501") (29 U.S.C. § 791) is the "exclusive remedy" for federal employees bringing a claim of disability discrimination under the Rehabilitation Act.  Boyd, 752 F.2d at 413 ("[S]ection 501 is the exclusive remedy for discrimination in employment by the Postal Service on the basis of handicap."); Johnston v. Horne, 875 F.2d 1415, 1420-21 (9th Cir.1989) (Section 504 of the Rehabilitation Act inapplicable to federal employees) *overruled on other grounds as recognized in* Williams-Scaife v. Dep't of Def. Dependent Schs., 925 F.2d 346, 348 n.4 (9th Cir. 1991).[24]  District court decisions are in accord.  E.g., Rogers v. Potter, No. C 08-2897 SBA, 2010 WL 1608867, at *5 (N.D. Cal. April 20, 2010) (unpublished) ("Federal employees seeking redress for disability discrimination must rely on section 501 of the Rehabilitation Act, 29 U.S.C. § 791.") (citing Johnston).

In assuming that the word "solely" is part of plaintiff's prima facie case, defendant

---

[22]  Section 504 provides in relevant part as follows: "(a) [. . .] No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, **solely** by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service . . . ." 29 U.S.C. § 794(a) (emphasis added).

[23]  "Section 504 does not on its face apply to federal employees; rather, it prohibits 'discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by any Executive agency.'" Taylor v. Small, 350 F.3d 1286, 1291 (D.C. Cir. 2003) (quoting 29 U.S.C. § 794).

[24]  See Rivera v. Heyman, 157 F.3d 101, 103-04 (2nd Cir. 1998) (noting a split in the circuits regarding whether a federal employee's disability discrimination claim can be brought pursuant to Section 501, Section 504, or both, and confirming that the Ninth Circuit has pronounced that federal employees can sue under Section 501 exclusively).  The court in Rivera explained, "The circuits are split on whether or not a disabled federal employee can assert a claim under section 504. The Fifth, Sixth, and Eighth Circuits have concluded that section 501 and section 504 of the Rehabilitation Act overlap, and that federal employees can sue under both provisions. [Citation.] The Seventh, Ninth, and Tenth Circuits have held that section 501 is the exclusive remedy for federal employees suing under the Rehabilitation Act." Id. (citations omitted).

1  cited one Ninth Circuit authority: <u>Wong</u>, 410 F.3d at 1058.  (Mot. for Summ. J at 5-6.)

2  Defendant did not analyze <u>Wong</u> in any detail.  (<u>Id.</u>)  However, <u>Wong</u> is distinguishable.  The

3  plaintiff in <u>Wong</u> was suing the University of California, a recipient of federal funds, which

4  necessarily made that action pursuant to Section 504.  <u>Id.</u>  Here, plaintiff is a federal employee

5  suing the federal government directly as her federal employer—*not* as a recipient of federal funds

6  —and thus plaintiff's action is pursuant to Section 501.

7        Accordingly, Section 501, not Section 504, governs plaintiff's action and dictates

8  the elements of her prima facie case.[25]  <u>See</u> <u>Boyd</u>, 752 F.2d at 413; <u>Johnston</u>, 875 F.2d at 1420-

9  21; <u>Rogers</u>, 2010 WL 1608867 at *5 ("Federal employees seeking redress for disability

10  discrimination must rely on section 501 of the Rehabilitation Act, 29 U.S.C. § 791.") (citing

11  <u>Johnston</u>); <u>Stewart</u>, 2000 WL 1705657 at *3-4.

12        2.      *Section 501 Requires Plaintiff To Show That She Was Not Hired "Because Of"*
               *Her Disability, Rather Than "Solely" Because Of Her Disability*
13

14        Because Section 501 applies to this action, the word "solely" is not part of

15  plaintiff's prima facie case.  As discussed above, to state a prima facie case under 29 U.S.C. §

16  791 (a.k.a., "Section 501") of the Rehabilitation Act, a plaintiff must "demonstrate that (1) she is

17  a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered

18  discrimination because of her disability."  <u>Walton</u>, 492 F.3d at 1005[26]; <u>Reynolds</u>, 815 F.2d at

19

_____

20     [25]  Because the prima facie cases under Section 501 and Section 504 both give plaintiff
the burden of proving she was "qualified" for the position, the preceding segment of this order
21  analyzing whether plaintiff was "qualified" did not require a determination of whether Section
501 or 504 applies.  <u>E.g.</u>, <u>Mustafa</u>, 157 F.3d at 1174, n.2 ("otherwise qualified" as an element of
22  the prima facie case for a Section 504 action); <u>Walton</u>, 492 F.3d at 1005 (identifying whether
plaintiff was "qualified" for the position as part of plaintiff's prima facie case).
23
     [26]  <u>Walton</u> proceeded under Section 501 because the defendant, the United States
24  Marshals Service, is a federal employer.  <u>Walton</u>, 492 F.3d at 1005.  <u>Walton</u> provides: "To state a
prima facie case under the Rehabilitation Act, a plaintiff must demonstrate that (1) she is a
25  person with a disability, (2) who is otherwise qualified for employment, and (3) suffered
discrimination because of her disability."  <u>Id.</u> at 1005.  <u>Walton</u>'s characterization of Section
26  501's prima facie case does not contain the word "solely."  However, in support of <u>Walton</u>'s

573–574.  Under the express terms of Section 501, a plaintiff must demonstrate that her disability was a "motivating factor" behind the discrimination.  29 U.S.C. § 591(g) (adopting ADA standards for claims under § 501 of the Rehabilitation Act).")

At least one federal district court in the Ninth Circuit has expressly determined that:

> [T]he ADA standards incorporated into the Rehabilitation Act under § 501(g) do not require the adverse employment action to have been 'solely by reason of' disability, in contrast to the explicit terms of § 504.  See 42 U.S.C. § 12112(a).  The omission of this language was not accidental.

Stewart, 2000 WL 1705657 at *3-4.  Accordingly, to meet her burden on summary judgment, plaintiff need not show that she was not hired "solely" because of a disability.  Instead, plaintiff must show that she was not hired "because of" her disability—that her disability was a "motivating factor" behind the discrimination.  See id.; 29 U.S.C. § 791(g) (adopting standards for Americans with Disabilities Act for claims under § 501 of the Rehabilitation Act); Walton, 492 F.3d at 1005; Reynolds, 815 F.2d at 573–574.

    3.    *Plaintiff Has Shown That She Was Not Hired, At Least In Part, "Because Of" Her Disability*

Plaintiff has offered evidence that she was denied the Timber Sale Prep position at least partially "because of" her disability.  It is undisputed that Parker told plaintiff that she would not be hired because of alleged "safety issues":

> I did call a couple people that were listed as your supervisors.  As I understand it, there were previous **safety issues** with you working in the woods.  Due to the nature of the Beckwourth Sales Prep position, the dangerous nature of working

---

construction of that prima facie case, the court summarily cites to Wong— a Section 504 action where the term "solely" was indeed part of the prima facie case.  Id. (citing Wong, 410 F.3d at 1058.)  However, no explanation or analysis of Wong accompanies this curious citation, and without more, the undersigned declines to construe Walton's citation to Wong as suggesting that Wong applies to a prima facie case in a Section 501 action.

> conditions and the requirements of working alone, I can not support moving you into that position.  I have spoken to Kathy Lacy Storost regarding the **safety issue** and my decision.  I am sorry that this position will not work out for you.  I understand that you are a good employee and a hard worker.  I would support other positions such as Business Management, Special Uses or a type of position where there would be less of a dangerous exposure.  I will keep you in mind for other positions.  [. . .]  As a District Ranger I am responsible for the **safety** of my employees.  I take this responsibility very seriously.

(Exh. C to Parker Decl. (emphasis added).)

As framed by Parker and Helton themselves, these "safety issues" arose *directly* from plaintiff's hearing abilities.  For instance, Parker has declared that Helton told her that plaintiff's "lack of hearing was a big safety issue," and that "the district was extremely [concerned] about her hearing ability as she was working around logging equipment where hearing is extremely important."  (Parker Decl. ¶¶ 9-10.)  Email evidence in the record also confirms that, in her decision-making, Parker linked plaintiff's "safety issues" with plaintiff's hearing disability, such that reference to "safety issues" necessarily involved at least some reference to plaintiff's hearing abilities:

> Hi Dave.  You are listed as the person who supervised [plaintiff] in 2005 on a detail.  I was wondering about her skill and ability in the woods: specifically **if her hearing was a safety issue with her work**.

(Exh. B to Parker Decl. [email exchange dated June 11, 2008 between Parker and Helton] (emphasis added).)

> [Helton] told me they had to end [plaintiff's] detail in sale administration . . . early due to safety.  **There were several times that she was almost taken out by equipment and falling trees due to her lack of hearing. He said that lack of hearing was a big safety issue**.

(Exh. A to Parker Decl. [email from Parker to herself dated June 11, 2008, commemorating Parker's conversation with Helton] (emphasis added).)

////

> [Plaintiff] sent me her resume and I followed up on a couple of supervisors.  **They said her hearing disability was an extreme safety hazard and that they had to end her detail early because of safety issues**.

(Exh. D to Oppo. at "page 157" [Parker's email to Alice Carlton and Maria Garcia dated June 13, 2008, re: Parker's decision not to hire plaintiff] (emphasis added).)

Similarly, according to Helton, all of plaintiff's alleged safety incidents were related, *at least in part*, to her hearing abilities.

> Because of a few instances involving personal safety, her detail was terminated early.  **The district was extremely concerned about her hearing ability as she was working around logging equipment where hearing is extremely important.**  On two occasions she was at risk of severe injury, if not death, **either because of her hearing or** lack of knowledge regarding harvesting equipment **or a combination of both factors**.  At that time, she also had limited woods skills **which combined with her hearing capability** make [sic] **a safety situation** that we had to address.

(Exh. B to Parker Decl. (emphasis added).)

Given the foregoing, in this particular case, plaintiff's alleged "safety issues" are inextricably tied to plaintiff's disability.  Because Parker at least partially based her decision on plaintiff's "safety issues," and because the record indicates that plaintiff's alleged "safety issues" resulted in part from her hearing disability, plaintiff has met her burden of showing that she was denied the Timber Sale Prep position at least partially "because of" her disability.  See 29 U.S.C. § 791(g) (adopting standards for Americans with Disabilities Act for claims under § 501 of the Rehabilitation Act); Walton, 492 F.3d at 1005; Reynolds, 815 F.2d at 573–74; Stewart, 2000 WL 1705657 at *3-4.  As a result, there is a genuine dispute of material fact regarding whether plaintiff's disability was a motivating factor in the decision not to hire her for the Timber Sale Prep position.

////

////

31

C.      Defendant's Third Argument: Defendant Had Legitimate, Nondiscriminatory
        Reasons For Not Hiring Plaintiff For The Timber Sale Prep Job

Once a prima facie case has been established, the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the action.  Reynolds, 815 F.2d at 574; Lucero, 915 F.2d at 1371.

1.      *Proffered Legitimate Nondiscriminatory Reasons: Plaintiff's "Safety Issues" And "Poor Performance"*

Defendant suggests that plaintiff's "poor performance and safety issues" were legitimate, nondiscriminatory reasons that plaintiff was not hired.  (Mot. for Summ. J. at 10.)

In terms of "poor performance," Parker was apparently persuaded by Helton's statements that: plaintiff had "attendance issues," a "hard time" learning, was "not qualified" for a timber sale position, and that she had "limited woods skills."  (Parker Decl. ¶¶ 9-11.)  According to Parker, these reasons constituted "poor performance," and combined with plaintiff's "safety issues," made plaintiff "unqualified" for the job in question.  (Id. ¶ 11.)  Parker also declared that her decision was based on plaintiff's "lack of qualifications" and "inexperience."  (Id. ¶ 19.)

In terms of "safety issues," as described above, it is undisputed that Parker told plaintiff that she would not be hired because of alleged "safety issues."  (Exh. C to Parker Decl.)  Parker was apparently persuaded by Helton's statements that: plaintiff's detail was terminated early due to "safety issues," plaintiff's "lack of hearing was a big safety issue," plaintiff had "a few instances involving personal safety," and that "the district was extremely [concerned] about her hearing ability as she was working around logging equipment where hearing is extremely important."  (Parker Decl. ¶¶ 9-10.)  Parker declared that, in her view, plaintiff's "safety issues" made plaintiff unsuitable for the Timber Sale Prep job.  (Parker Decl. ¶¶ 11-12, 19.)

Because evidence suggests that "safety issues" and "poor performance" were legitimate nondiscriminatory reasons motivating Parker's decision, the burden shifts to plaintiff to ////

1  proffer sufficient evidence of pretext.[27]  Smith v. Barton, 914 F.2d 1330, 1339 (9th Cir. 1990)

2  (applying McDonnell Douglas framework for Title VII discrimination claims to discrimination

3  claim brought under ADA); Mustafa, 157 F.3d at 1175; Wilborn, 222 F. Supp. 2d at 1206-07

4  (applying McDonnell Douglas burden-shifting framework to disability discrimination claim under

5  Rehabilitation Act).

6          2.      *"Safety Concerns" As A Pretext For "Hearing Disability"*

7          A plaintiff "may demonstrate pretext either directly by persuading the court that a

8  discriminatory reason likely motivated [the defendant] or indirectly by showing that [the

9  defendant's] proffered explanation is unworthy of credence."  Diaz, 521 F.3d at 1212 (citation and

10  quotation marks omitted) (applying McDonnell Douglas burden-shifting framework to claim

11  under the Age Discrimination in Employment Act); Snead, 237 F.3d at 1093-94; Hernandez v.

12  Spacelabs Med. Inc., 343 F.3d 1107, 1115 (9th Cir. 2003).

13          A plaintiff must produce specific, substantial evidence of pretext.  Bradley v.

14  Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996) ("[An] employee's subjective

15  personal judgment of her competence alone does not raise a genuine issue of material fact"); see

16  also Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 659 (9th Cir.2002) ("[The

17  plaintiff's] own statement that he was performing at a level equal to that of other employees is not

18  enough to raise a genuine issue of material fact").  "While the plaintiff does not have to show

19  direct evidence of pretext, [she] cannot merely make conclusory statements that the defendant's

20  decisions were motivated by unlawful discrimination."  Diaz v. Federal Express Corp., 373 F.

21  Supp. 2d 1034, 1064 (C.D. Cal. 2005) (citing cases).  When examining pretext, although the

22  inference of discrimination from the prima facie case "drops out of the picture," the evidence used

23  in establishing the prima facie case may be considered for evaluating pretext.  Lindsey v. SLT Los

24  _____

25  [27]  The undersigned has doubts as to whether "safety issues" can be considered
    "nondiscriminatory reasons" in this particular case, given that plaintiff's "safety issues" were
    inextricably tied to plaintiff's hearing disability as described above.  However, the undersigned
26  will proceed to the "pretext" prong of the analysis rather than analyze that issue here.

1    Angeles, LLC, 447 F.3d 1138, 1148 (9th Cir. 2006).

2           Plaintiff has produced evidence demonstrating that defendant's reliance on

3    plaintiff's alleged "safety issues" was a pretext for discrimination based on a hearing disability.[28]

4    As discussed above, in this particular case, plaintiff's alleged "safety issues" are inextricably tied

5    to plaintiff's hearing abilities.

6           Evidence in the record reveals that Parker and Helton themselves linked the

7    concepts of plaintiff's "safety issues" and plaintiff's hearing disability, suggesting that concerns

8    purportedly about "safety issues" may actually have been concerns about how plaintiff's *disability*

9    might impact her performance.  For instance, Parker declared that Helton told her that plaintiff's

10   "lack of hearing was a big safety issue" and that "the district was extremely [concerned] about her

11   hearing ability as she was working around logging equipment where hearing is extremely

12   important."  (Parker Decl. ¶¶ 9-10.)

13          Documentary evidence in the record also indicates that, in her decision-making,

14   Parker often linked plaintiff's "safety issues" with plaintiff's hearing disability, such that

15   references to plaintiff's "safety issues" were explicit or implicit references to plaintiff's hearing

16   abilities.  For instance, as set out in detail above, Parker specifically asked Helton "if [plaintiff's]

17   hearing was a safety issue with her work." (Exh. A to Parker Decl.)  Similarly, in making her

18   decision, Parker understood that "[t]here were several times that [plaintiff] was almost taken out

19   by equipment and falling trees due to her lack of hearing. [Helton] said that lack of hearing was a

20   big safety issue." (Exh. A to Parker Decl.)  Parker also understood that plaintiff's supervisors

21   "said [plaintiff's] hearing disability was an extreme safety hazard and that they had to end her

22   detail early because of safety issues."  (Exh. D to Oppo. at page "157".)

23   _____

24          [28]  "The court need consider only the cited materials, but may consider other materials in
     the record."  Fed. R. Civ. P. 56(c)(3).  Plaintiff does not clearly argue that defendant's reliance on
25   plaintiff's alleged "safety issues" was pretextual because those "safety issues" were so
     intertwined with her hearing abilities.  However, the evidence in the record suggests that "safety
26   issues" could have been shorthand for plaintiff's hearing disability, as described below.

1    Similarly, according to an email from Helton to Parker, all of plaintiff's alleged

2  safety incidents were related, *at least in part*, to her hearing abilities:

3

4           **The district was extremely concerned about her
            hearing ability as she was working around logging
5           equipment where hearing is extremely important.**  On
            two occasions she was at risk of severe injury, if not
6           death, **either because of her hearing or** lack of
            knowledge regarding harvesting equipment **or a**
7           **combination of both factors**.  At that time, she also had
            limited woods skills **which combined with her hearing**
8           **capability** make [sic] **a safety situation** that we had to
            address.

9  (Exh. B to Parker Decl.)

10    Because Parker partially based her decision on plaintiff's alleged "safety issues,"

11  and because the evidence suggests that Parker's conception of plaintiff's "safety issues" as at

12  least partially related to plaintiff's hearing disability, a jury could find that defendant's purported

13  concerns about "safety issues" was a pretext for concerns about plaintiff's hearing disability and

14  how it might negatively impact plaintiff's job performance.  In other words, on these particular

15  facts, a jury could reasonably find that defendant summarily rejected plaintiff's application

16  because of her disability even though she may have been capable of performing the essential

17  functions of the position with a reasonable accommodation.  A jury could reasonably find that

18  defendant's references to plaintiff's so-called "safety issues" might have been shorthand for

19  plaintiff's "hearing ability," such that the use of the term "safety issues" was pretextual.  There

20  are genuine issues of material fact as to whether defendant's "safety issue" concerns were

21  pretextual, and plaintiff has presented enough of a plausible case of pretext to survive summary

22  judgment.

23    Plaintiff has also persuasively suggested a rather suspect timeline of events with

24  regard to the processing of her application.  Specifically, plaintiff suggests that Parker made her

25  decision based solely on Helton's word, without waiting for certification from Vocational

26  Rehabilitation personnel regarding plaintiff's ability to safely perform the Timber Sale Prep job.

1   (Oppo. at 10-11.)  Parker herself declared that, after having spoken with and emailed Helton, she

2   had "serious concern" about plaintiff and "determined that [plaintiff] was not qualified."  (Parker

3   Decl. at 11.)  Indeed, the evidence in the record indicates that Parker denied plaintiff the position

4   the very day Helton provided his views about plaintiff, without waiting to see if plaintiff's doctor

5   would approve her to work in the job, and without ascertaining whether any accommodation

6   might assuage Parker's concerns about plaintiff's hearing abilities and the safety issues

7   potentially arising therefrom.  See Hernandez, 343 F.3d at 1115 (finding "suspicious timing" to

8   be evidence of pretext).  There is no indication that Parker considered whether plaintiff's

9   disability (and safety issues potentially arising therefrom) could be accommodated *prior to*

10  rejecting plaintiff's application.[29]  The rapid-fire timing of Parker's rejection of plaintiff's

11  application is additional evidence suggesting pretext.

12          Plaintiff has proffered evidence of at least some causal link between her disability

13  and the rejection of her application for the Timber Sale Prep position, making summary judgment

14  inappropriate here.  A genuine issue of material fact exists as to whether the defendant's

15  proffered nondiscriminatory reasons are merely a pretext for discrimination on the basis of

16  plaintiff's hearing disability.[30]

17  ////

18

19      [29]  An unauthenticated email plaintiff filed with her Opposition suggests that Kathy Lacy-
    Storost an individual "who handles the Persons with Disabilities Employment Program for the
20  USFS's Pacific Southwestern Region," (Oppo. at 10), may have been involved in the decision
    not to hire plaintiff.  (Exh. D to Oppo. ("page 157") (email dated June 13, 2008 from Parker to
21  Alice Carlton and Maria Garcia).)  However, that email is dated two days *after* Parker had
    already rejected plaintiff's application on June 11, 2008.  (Exh. C to Parker Decl.)  Defendant has
22  not proffered evidence that, sometime *before* rejecting plaintiff's application, Parker attempted to
    find out whether a reasonable accommodation would assuage concerns about the potential safety
23  impacts of plaintiff's disability on her work.

24      [30]  Plaintiff offers several additional "pretext" arguments, such as, for instance, Helton's
    making false, animus-driven statements to Parker about plaintiff's abilities and work history.
25  (Oppo. at 3-6, 10-11.)  However, the undersigned need not examine whether these arguments
    support plaintiff's burden to show pretext, as the above-described link between plaintiff's alleged
26  "safety issues" and her disability sufficiently shows pretext for summary judgment purposes.

IV.      CONCLUSION

         In light of the foregoing, IT IS HEREBY RECOMMENDED that:

         1.      The Motion for Summary Judgment (Dkt. No. 22) filed by defendant Tom Vilsak, Secretary of Department of Agriculture, be denied.

         These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

         IT IS SO RECOMMENDED.

DATED:  December 1, 2011


                                        _____
                                        KENDALL J. NEWMAN
                                        UNITED STATES MAGISTRATE JUDGE